UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Adam L. Cijka,

    Plaintiff,

        v.                                             Civil Action No. 2:20–cv–168

James Baker and Morgan Rogers,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff Adam Cijka, a prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983, against Defendants James Baker, Commissioner of the Vermont Department of Corrections (DOC), and Morgan Rogers, a DOC employee, in their official capacities. (Doc. 5 at 2–3.) The Complaint seeks removal of an underlying pending detainer lodged against Plaintiff by a Pennsylvania district attorney,[1] dismissal of a pending Pennsylvania state indictment, and an award of at least $75,000 in compensatory and/or punitive damages. (*Id.* at 4–5.)

Defendants have filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 9.) Therein, Defendants argue that the Complaint should be

---

[1] A "detainer" is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993).

dismissed because the Court does not have jurisdiction to grant the relief Plaintiff seeks; and because the Complaint fails to allege: (a) how either Defendant might be responsible for a Pennsylvania detainer, (b) any injury that Plaintiff has suffered as a result of the detainer, and (c) any conduct on the part of either Defendant. (*Id.*) Plaintiff has filed an Opposition to Defendants' Motion, wherein he claims he is "entitled to a one[-]time amendment to put forth a more definitive [s]tatement to correct . . . defects to satisfactorily allow . . . Defendant[s] to understand Plaintiff's claims." (Doc. 10 at 1.) In Plaintiff's Opposition (Doc. 10) and in a Surreply that he filed in response to Defendants' Reply to the Opposition (Docs. 11, 12), Plaintiff makes new factual allegations regarding his communications with a Pennsylvania district attorney, a Pennsylvania court, and DOC personnel.

For the reasons explained below, I recommend that Defendants' Motion (Doc. 9) be GRANTED under Rule 12(b)(6), and that Plaintiff be granted leave to file an amended complaint.

## Analysis

Plaintiff brings this action under 42 U.S.C. § 1983, which provides a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."

*Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see Williams v. Riley*, 698 F. App'x 13, 15 (2d Cir. 2017) (mem.).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). Here, the Complaint alleges a deprivation of Plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment, right to due process under the Fourteenth Amendment, and unspecified rights under the federal Interstate Agreement on Detainers Act (IADA or IAD). (*See* Doc. 5 at 3.)

The IADA provides as follows:

> The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

18 U.S.C. § app. 2 § 2; *see* Vt. Stat. Ann. tit. 28, § 1501. The purpose of the IADA is "to help alleviate the uncertainty and anxiety of prisoners resulting from pending criminal cases" because such uncertainty and anxiety "ha[s] a detrimental effect

3

upon prisoner rehabilitation." *Adams v. United States*, 423 F. Supp. 578, 579 (E.D.N.Y. 1976), *aff'd*, 559 F.2d 1202 (2d Cir. 1977); *see also State v. Crawford*, 169 Vt. 371, 373, 737 A.2d 366, 367 (1999) ("The IAD sets forth procedures for the prompt disposition of criminal charges filed in one state against a prisoner in another state."). "The Act is also intended to prescribe a uniform procedure to secure the presence of prisoners incarcerated in other jurisdictions." *Adams*, 423 F. Supp. at 579. Stated differently, the IADA is meant to "assure prompt disposition of charges against prisoners already detained on other charges." *Cabrera-Delgado v. United States*, 111 F. Supp. 2d 415, 417 (S.D.N.Y. 2000).

In this litigation, Plaintiff relies on Articles III and IV of the IADA, which the United States Supreme Court has deemed "[t]he central provisions of the [Act]." *United States v. Mauro*, 436 U.S. 340, 351 (1978). Article III(a) "provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer," and Article IV "provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges." *Id.*

## I. Dismissal under Rule 12(b)(1)

Defendants first argue that the Complaint should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

4

### A.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," *Makarova*, 201 F.3d at 113. Moreover, jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted). Finally, in considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113; *see also Fed. Home Loan Mortg. Corp. v. Findlay Estates, LLC*, No. 20 Civ. 8884 (PAE), 2021 WL 323869, at *2 (S.D.N.Y. Feb. 1, 2021).

### B.   Analysis

In their Motion, Defendants claim that Plaintiff does not have standing because he alleges neither an injury-in-fact nor an injury that can be fairly traceable to the conduct of Defendants. (Doc. 9 at 5–6.) Moreover, Defendants claim that the remedies Plaintiff seeks are not redressable by a favorable judicial decision. (*Id.* at 7.) In their Reply, Defendants appear to abandon this argument,

5

focusing solely on their request that the Complaint be dismissed under Rule 12(b)(6). (*See* Doc. 11.)

"[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted).

Though the Complaint does not clearly allege an injury-in-fact that is likely to be redressed in this litigation, Plaintiff's statements in his Opposition and Surreply clarify the allegations, meeting the jurisdictional requirement.[2] Specifically, Plaintiff asserts that Defendants failed to follow the required "Procedural Guidelines" provided in Article III(a) and IV(a) and (c) of the IADA, causing injury to Plaintiff in the form of "grave emotional and [m]ental distress," "deni[al] [of] [p]arole solely on the basis of th[e] Dentainer/Untried Indictment," and incarceration "past [Plaintiff's] minimum [sentence date]." (Doc. 10 at 3; *see also id.* at 6.) Plaintiff further alleges that Defendants "failed to provide . . . the expeditious delivery of [him] to the receiving state for trial prior to the termination of his sentence in the sending state, and by filing and having [Form] V [g]ranted by the Commonwealth of Pennsylvania, and by not bringing the Plaintiff to Pennsylvania

---

[2] As noted above, on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court may consider matters outside the pleadings. *See Makarova*, 201 F.3d at 113.

6

for trial." (*Id.* at 8.)  And finally, Plaintiff claims that, as a result of Defendants' failure to follow the required procedures provided by the IADA, he has "suffered the injuries of his liberty [i]nterests being restricted and violated . . . [,] preventing [him] from participating in [p]arole (a liberty interest), supervised community release, work camp[,] and earning the benefit of [g]ood [t]ime reduction of his sentencing term." (Doc. 12 at 3.)

Based on the foregoing, I find that Plaintiff has standing to pursue his claims.  Accordingly, I recommend that Defendants' request to dismiss based on lack of subject-matter jurisdiction under Rule 12(b)(1) be DENIED.

## II.   Dismissal Under Rule 12(b)(6)

Alternatively, Defendants assert that the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As described by the United States Supreme Court in *Iqbal* and *Twombly*, a plaintiff need not provide "detailed factual allegations" to

support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns, Inc.*, 493 F.3d at 98. Moreover, in cases like this, which involve a *pro se* plaintiff, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed therein]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). Even *pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see also Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("*[P]ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)). And the court need not credit the complaint's "legal conclusions" and "[t]hreadbare recitals of the elements

8

of a cause of action, [which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks omitted)).

Unlike the standard on a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), in considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). Applying this standard here, in deciding Defendants' request to dismiss the Complaint pursuant to Rule 12(b)(6), the Court does not consider those allegations that are stated in Plaintiff's Opposition or Surreply (Docs. 10, 12), but are not pled in the Complaint (Doc. 5), as they are outside the scope of the Court's review.

B. Analysis

    i. **Official-Capacity Immunity**

First, Plaintiff's claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment and the doctrine of sovereign immunity.[3] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity,

---

[3] Although in his Opposition, Plaintiff describes his claims as being brought against Defendants in their personal capacities (*see* Doc. 10 at 8, 9), the Complaint itself indicates that the claims are being brought against Defendants in their "[o]fficial capacit[ies]" (Doc. 5 at 2).

9

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("Although the [Eleventh] Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens, as well as state court actions against state governments." (citation omitted)). "Stated as simply as possible," the Eleventh Amendment stands for the proposition that, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[D]espite the limited terms of the Eleventh Amendment, a federal court [may] not entertain a suit brought by a citizen against his own State."). Therefore, although § 1983 provides a federal forum to remedy many deprivations of civil liberties, "it does *not* provide a federal forum for litigants who seek a remedy *against a State* for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (emphases added).

Moreover, the immunity recognized by the Eleventh Amendment "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks omitted). Thus, where, as here, a state official is sued for damages in his or her official capacity, the suit is deemed a suit against the state and is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Pennhurst*, 465 U.S. at 101–02 (holding that Eleventh Amendment bars a suit in federal court against state officials when the state is the real, substantial party in interest); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (explaining that, to extent civil rights action constitutes suit against state official seeking damages for actions taken in his official capacity, such suit is deemed to be against the state, and official is entitled to invoke Eleventh Amendment immunity belonging to the state). Exceptions to this general rule apply when there has been an explicit and "unequivocal[]" waiver of immunity by a state, or a similarly clear abrogation of the immunity by Congress. *See Pennhurst*, 465 U.S. at 99 ("Our reluctance to infer that a [s]tate's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system."); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015) ("The Eleventh Amendment bars a damages action in federal court against a state and its

11

officials when acting in their official capacity *unless the state has waived its sovereign immunity or Congress has abrogated it.*" (emphasis added)).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 Vt. Stat. Ann. tit. 12, § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979).

I therefore recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED under Rule 12(b)(6) with respect to Plaintiff's claims for monetary damages against Defendants in their official capacities.

### ii.   Personal Involvement

Next, the Complaint fails to allege that Defendants were personally involved in any of the claimed unlawful conduct or acted with gross negligence in supervising subordinates who were involved in that conduct. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff's Complaint makes no allegation that either Defendant participated in the issuance of the underlying detainer or indictment, or in any action arising from that issuance, whether intentional or negligent. Rather,

it appears that a Pennsylvania district attorney named Matthew Fogal is responsible for the detainer being lodged. (*See* Doc. 5 at 5.) The Complaint's allegations do not suffice to meet the requirement of pleading that Defendants Baker and Rogers were personally involved in the claimed constitutional and statutory violations. And at this stage of the proceedings, the failure to allege Defendants' personal involvement is fatal to Plaintiff's claims. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation); *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (holding that a § 1983 claim that fails to allege the personal involvement of the defendant fails as a matter of law).

To the extent the Complaint alleges that Defendants are liable to Plaintiff under a theory of supervisor liability, i.e., pursuant to Defendants' respective roles as supervisors at the prison where Plaintiff was incarcerated during the relevant period, they also fail. Again, the allegations against these Defendants must show some level of personal responsibility, given that supervisor liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti v. Bachmann*, 983 F.3d 609, 617–18 (2d Cir. 2020). The Second Circuit has clearly held that mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*,

21 F.3d at 501 (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

The Complaint simply does not allege any action or inaction on the part of either Defendant from which the Court could infer they were personally involved in the alleged constitutional or statutory violations. Therefore, I recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED under Rule 12(b)(6) for failure to allege the personal involvement of Defendants.

### iii. Claim upon which Relief May Be Granted

Finally, the Complaint does not meet the pleading standard set forth in *Iqbal* and *Twombly*, relying merely on labels and conclusions, and a formulaic recitation of the elements of a cause of action. Specifically, the Complaint does not clearly allege a deficiency with respect to the underlying Pennsylvania detainer or indictment, what right of Plaintiff's was violated as a result of the detainer, or what act or omission of either or both Defendants caused or contributed to causing that violation. The Complaint conclusorily claims that Plaintiff's "request for Final Disposition of Untried Indictment was ignored," and vaguely asks the Court to "look into the legality of" and "[r]emove" the underlying detainer "once verified that it is illegal." (Doc. 5 at 5.) A pleading like this, that merely "tenders naked assertions devoid of further factual enhancement," will not suffice. *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted). I thus recommend dismissing the Complaint under Rule 12(b)(6).

## Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED for failure to state a claim under Rule 12(b)(6). I further recommend that Plaintiff be afforded leave to amend, given the liberal standard for allowing amendment of *pro se* pleadings. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (noting abuse of discretion standard applies to denial of motions to amend *pro se* complaints); *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) (emphasizing that "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). If Plaintiff chooses to submit an amended complaint, it shall be titled "Amended Complaint" and shall contain all claims against all parties, as it will supersede the original Complaint in all respects. Failure to file such an amended complaint should result in the dismissal of Plaintiff's claims with prejudice.

Dated at Burlington, in the District of Vermont, this 19th day of March 2021.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).