UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Adam L. Cijka,

    Plaintiff,

        v.

James Baker and Morgan Rogers,

    Defendants.

Civil Action No. 2:20–cv–168

## REPORT AND RECOMMENDATION
(Doc. 21)

Plaintiff Adam Cijka, a prisoner proceeding *pro se*, brings this action under 42 U.S.C.

§ 1983, against Defendants James Baker, former Commissioner of the Vermont Department of

Corrections (DOC), and Morgan Rogers, a DOC employee, claiming violations of his rights

under the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. Appendix 2.[1]  Plaintiff

contends that these alleged violations adversely affected his eligibility for parole, supervised

community release programs, and work camp, and impacted his ability to earn good time

reduction of his term of imprisonment.  (Doc. 20 at 2, 13.)  In his Amended Complaint, Plaintiff

requests removal of a detainer pending against him in Pennsylvania, dismissal of the underlying

indictment in Pennsylvania, and an award of at least $75,000 in compensatory and/or punitive

damages.  (*Id.* at 14.)

Defendants have filed a Motion to Dismiss the Complaint for lack of subject-matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon

which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the reasons

---

[1] The IADA is codified in Vermont law at 28 V.S.A. §§ 1501–09.

explained below, I recommend that Defendants' Motion (Doc. 21) be GRANTED on both grounds and the Amended Complaint be DISMISSED without leave to amend.

## Background

**I.     Dismissal of Plaintiff's Initial Complaint**

Plaintiff's initial Complaint alleged that Defendants Baker and Rogers, in their official capacities, violated his IADA right to prompt disposition of the charge pending in Pennsylvania, resulting in a denial of due process. (Doc. 5.) He requested removal of the Pennsylvania detainer, dismissal of the "[u]ntried Indictment," and an award of $75,000 in "compensatory . . . and/or punitive damages." (*Id.* at 5.) Defendants requested dismissal of the Complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

In a March 19, 2021 Report and Recommendation, Magistrate Judge Conroy recommended dismissal of the Complaint. (Doc. 13.) Finding that Plaintiff had adequately demonstrated standing, Judge Conroy recommended denial of the motion to dismiss on subject-matter jurisdiction grounds. (*Id.* at 6–7.) He further recommended dismissal of the Complaint for failure to state a claim. Specifically, Judge Conroy found that the Eleventh Amendment barred claims for monetary damages against Defendants in their official capacities. (*Id*. at 12.) He also found that Plaintiff's Complaint failed to allege the requisite personal involvement of Defendants in the allegedly unconstitutional conduct to sustain a § 1983 claim. (*Id*. at 12–14.)

On April 16, 2021, the District Court adopted the Report and Recommendation as the Court's Opinion and Order, dismissed the Complaint, and granted Plaintiff leave to amend the Complaint. (Doc. 19.)

II.    **The Amended Complaint**

Plaintiff filed the Amended Complaint against Defendants Baker and Rogers "in their individual and personal capacities" on May 25, 2021.  (Doc. 20 at 1.)  The Amended Complaint generally describes Plaintiff's efforts while in Vermont state custody "to invoke his right [under the] IAD[A] to resolve the [u]ntried Indictment in Pennsylvania."  (*Id*. at 3.)  Plaintiff alleges that Defendant Rogers "denied all of [his] requests to invoke IAD[A]" in 2017 (*id*. at 4, ¶ 14), failed to follow the "[p]rocedural [g]uidelines" of the IADA (*id*. at 7, ¶ 26), provided "vague" responses to his questions regarding the appropriate procedure to address the Pennsylvania detainer (*id*. at 8, ¶ 28), and lodged the detainer received from the District Attorney in Pennsylvania (*id*. at 9, ¶ 32).  With respect to Defendant Baker, Plaintiff alleges that he failed to follow the "[p]rocedural [g]uidelines" of the IADA (*id*. at 7, ¶ 26), lodged the detainer received from Pennsylvania (*id*. at 9, ¶¶ 32–33), and failed to respond to Plaintiff's grievance in which he apparently raised his IADA rights and the detainer generally (*id*. at 10, ¶ 33).  Similar to the initial Complaint, Plaintiff again requests that the Court "remov[e] . . . [the] [d]etainer" (*id.* at 1, ¶ 1), dismiss the Pennsylvania Indictment (*id.*), and award monetary damages of "at least $75,000 in compensatory and/or punitive damages" (*id*. at 14, ¶ 43).

<u>Analysis</u>

I.    **42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, a plaintiff may bring a civil claim for damages against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

3

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must

establish that: "(1) the defendant acted under color of state law; and (2) as a result of the

defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her

constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir.

1998); *see Williams v. Riley*, 698 F. App'x 13, 15 (2d Cir. 2017) (mem.). "Section 1983 itself

creates no substantive rights; it provides only a procedure for redress for the deprivation of rights

established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of

Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). The Amended Complaint alleges that

Defendants' alleged action or inaction related to the IADA procedure deprived him of his rights

under the Fourth, Eighth, and Fourteenth Amendments. (*See* Doc. 20 at 1–2, 10, 13.)

## II.    The Interstate Agreement on Detainers Act

The IADA is "a compact entered into by 48 states, the United States, and the District of

Columbia to establish procedures for resol[ving] . . . one State's outstanding charges against a

prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000); *see Adams v. United

States*, 423 F. Supp. 578, 579 (E.D.N.Y. 1976) (noting the IADA is "intended to prescribe a

uniform procedure to secure the presence of prisoners incarcerated in other jurisdictions"), *aff'd*,

559 F.2d 1202 (2d Cir. 1977). Given the Act's stated purpose of "encourag[ing] the expeditious

and orderly disposition of  . . . charges [outstanding against a prisoner] and determin[ing] . . . the

proper status of any and all detainers based on untried indictments, informations, or complaints,"

18 U.S.C. § app. 2 § 2, the Act "prescribes procedures . . . by which [a] prisoner may demand the

speedy disposition of certain charges pending against him in another jurisdiction," *United States

v. Mauro*, 436 U.S. 340, 343 (1978). *See State v. Crawford*, 169 Vt. 371, 373, 737 A.2d 366,

367 (1999) ("The IAD[A] sets forth procedures for the prompt disposition of criminal charges filed in one state against a prisoner in another state."). The IADA is also intended "to prevent excessive interference with a prisoner's rehabilitation" and "to help alleviate the uncertainty and anxiety of prisoners resulting from pending criminal cases," because such uncertainty and anxiety "ha[s] a detrimental effect upon prisoner rehabilitation." *Adams*, 423 F. Supp. at 579; *see United States v. Woods*, 775 F.2d 1059, 1060 (9th Cir. 1985) ("Article IV(e) is intended to prevent prisoners from being shuttled back and forth between institutions, a practice which is disruptive of rehabilitation and may work a denial of privileges earned at one institution." (citing *United States v. Roy*, 771 F.2d 54, 57 (2d Cir. 1985)). "As a congressionally sanctioned interstate compact within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IADA is a federal law subject to federal construction." *Hill*, 528 U.S. at 111 (internal quotation marks omitted).

Plaintiff relies on Articles III and IV of the IADA, which the United States Supreme Court considers "[t]he central provisions of the [Act]." *Mauro*, 436 U.S. at 351. Article III(a) "provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer," and Article IV "provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges." *Id.* A "detainer" is a request made by the criminal justice agency of a state that is seeking to bring charges against a prisoner who is in another state's custody, directed to the institution in which the prisoner is housed, to hold the prisoner for the charging state's agency or notify the agency when the prisoner's release is imminent. *Hill*, 528 U.S. at 111 (citing *Fex v. Michigan*, 507 U.S. 43, 44 (1993)). The

Supreme Court has explained the procedure that results from the filing of a detainer under the

IADA:

> After a detainer has been lodged against him, a prisoner may file a request for a final disposition to be made of the indictment, information, or complaint. Upon such a request, the prisoner shall be brought to trial within [180] days, provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. Resolution of the charges can also be triggered by the charging jurisdiction, which may request temporary custody of the prisoner for that purpose. In such a case, trial shall be commenced within [120] days of the arrival of the prisoner in the receiving state, subject again to continuances for good cause shown in open court. If a defendant is not brought to trial within the applicable statutory period, the IAD requires that the indictment be dismissed with prejudice.

*Id.* at 112 (citations and internal quotation marks omitted); *see Alabama v. Bozeman*, 533 U.S.

146, 151 (2001) ("[I]t is important to keep in mind that the [IADA] basically (1) gives a prisoner

the right to demand a trial within 180 days; and (2) gives a State the right to obtain a prisoner for

purposes of trial, in which case the State (a) must try the prisoner within 120 days of his arrival,

and (b) must not return the prisoner to his 'original place of imprisonment' prior to that trial.").

Reading the Amended Complaint liberally, Plaintiff—a prisoner in the custody of the

State of Vermont—alleges that the District Attorney in Franklin County, Pennsylvania filed a

detainer requesting that the Vermont DOC hold Plaintiff or notify the Pennsylvania District

Attorney before releasing him at the conclusion of his term in custody. (*See* Doc. 20 at 1–2, 4–5,

8–9.) Since the filing of that detainer, Plaintiff claims Defendants have failed to follow the

required procedural guidelines of the IADA. He therefore seeks to have the detainer removed

and the underlying indictment dismissed, and damages paid to him for Defendants' alleged role

in the denial of his procedural rights under the IADA. (*Id.* at 1, 14.)

III.    **Dismissal under Rule 12(b)(1)**

Defendants first argue that the Amended Complaint should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).  Defendants argue that subject-matter jurisdiction is lacking because Plaintiff's alleged injuries are "conjectural or hypothetical." (Doc. 21 at 5.)  Defendants further contend that Plaintiff has not alleged a "causal connection" between the claimed injuries and Defendants' alleged conduct.  (*Id*.)  According to Defendants, any injuries to Plaintiff are more properly attributable to Pennsylvania actors involved in the detainer process, not the Vermont Defendants.  (*Id*. at 6.)  Finally, Defendants argue that any decision in Plaintiff's favor could not provide the equitable relief he seeks; namely, removal of the detainer and dismissal of the Pennsylvania indictment.  (*Id*. at 6–7.)

Plaintiff responds that the Court already found subject-matter jurisdiction when it considered the initial Complaint.  (*See* Doc. 13 at 5–7 (Report and Recommendation); Doc. 19 at 2 (Opinion and Order reviewing Magistrate Judge's finding of subject-matter jurisdiction).)  He reiterates that Defendants' alleged missteps in the handling of his request under the IADA to be transferred to face charges in Pennsylvania resulted in the injuries he describes in the Amended Complaint.  (Doc. 22 at 2.)  Regarding Defendants' argument that Plaintiff's alleged injuries are hypothetical, Plaintiff states that he has suffered injuries in fact, including "psychological pressure" arising from the uncertainty of the Pennsylvania charges; a higher classification level corresponding to designation to a higher security prison in Vermont because of the pending Pennsylvania charge; continued imprisonment in Vermont past his minimum release date; and ineligibility for certain benefits such as work release and good-time credit.  (*Id*. at 2–3.)  With respect to Defendants' argument that Plaintiff has not shown a causal connection between Defendants' conduct and the alleged injuries, Plaintiff responds that "it is only the

Commissioner and [the] IAD[A] Coordinator/Extradition Specialist [who are] responsible for orchestrating all of the procedural protections of [the] IAD[A]." (*Id*. at 4.)

### A.    Legal Standards Under Federal Rule of Civil Procedure 12(b)(1)

A case is properly dismissed under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted).

"[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted). Plaintiff has not satisfied the third standing requirement because the equitable relief requested—removal of the underlying detainer and dismissal of the untried Pennsylvania indictment—is not "likely to be redressed by a favorable decision." *Id.*

### B.    The Court does not have the authority to invalidate the Pennsylvania detainer or to dismiss the Pennsylvania Indictment.

The Court does not have the power to effectuate the equitable relief requested. The IADA provides that when the charges underlying a detainer are not disposed of within 180 days, "the appropriate court of the jurisdiction where the indictment, information, or complaint has

been pending shall enter an order dismissing the same with prejudice, and any detainer based

thereon shall cease to be of any force or effect."  18 U.S.C.A. app. 2, § 2, Art. V(c).  Under the

IADA, "*only* the courts of the receiving jurisdiction"—Pennsylvania here—"have the power [to

dismiss charges underlying a detainer]."  *Petition of Gay*, 406 Mass. 471, 476, 548 N.E.2d 879,

883 (1990).  The "sending" jurisdiction, i.e., the state making the defendant available for

prosecution in the charging jurisdiction, has no such power under the IADA.  *See Nelson v.*

*Carlson*, 904 F.2d 560, 561 (10th Cir. 1990) ("The IADA contemplates that the remedy of

dismissal is available in the appropriate court of the jurisdiction where the charges are

pending."); *Trigg v. Moseley*, 433 F.2d 364, 366 (10th Cir. 1970) (principles of comity require

that issues involving alleged violations of the IADA and the appropriate relief, if any, be

determined in the first instance in the state court where the charges are pending); *State v.*

*Herring*, 210 Conn. 78, 84, 554 A.2d 686, 689 (1989) ("[O]nly a court in this state, where the

underlying charges had been filed, had the power to consider their dismissal."); *Giardino v.*

*Bourbeau*, 193 Conn. 116, 126, 475 A.2d 298 (1984) (finding IADA claim meritless because

Connecticut court was "powerless to dismiss" underlying charges  in Virginia); *Narel v. Liburdi*,

185 Conn. 562, 570–71, 441 A.2d 177, 182 (1981) ("Even when the plaintiff's situation is

viewed in light of the purposes to be served by the [IADA], the charging state is the appropriate

jurisdiction for remedial relief.  Any relief granted by the asylum state would be at best only

temporary and evanescent."); *Cross v. Comm'r of Corr.*, 27 Mass. App. Ct. 1154, 1155, 539

N.E.2d 74 (1989) ("States . . . have uniformly held that neither the [IADA] nor any other source

authorizes a sending State . . . to dismiss or otherwise invalidate a charge in the receiving

State . . . underlying a detainer for noncompliance with the [IADA], or even to inquire into such

compliance"); *Degina v. Carlson*, No. H 85-773, 1986 WL 15401, at *3 (D. Conn. Dec. 22,

1986) ("This court shares the conclusions of a majority of the other courts considering the issue, that it would be inconsistent with the legislative scheme of the IAD to hold that a court in the sending or custodial jurisdiction could dismiss a detainer . . . when authority to dismiss a detainer is expressly granted only to the charging jurisdiction.").

Subject-matter jurisdiction is lacking because only the appropriate Pennsylvania court where the Indictment is pending may effectuate the equitable relief requested. Therefore, I recommend that the equitable relief claims in the Amended Complaint be DISMISSED for lack of subject-matter jurisdiction under Rule 12(b)(1).[2]

## IV.    Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) requires that a complaint "provide the grounds upon which [its] claim rests," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As explained by the United States Supreme Court in *Iqbal* and *Twombly*, a plaintiff need not provide "detailed factual allegations" to support the claims alleged in the complaint, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

---

[2] Plaintiff correctly notes that the Court found subject-matter jurisdiction when it considered his initial Complaint. (Doc. 22 at 1–2.) The recommendation that subject-matter jurisdiction is lacking as to the Amended Complaint is not inconsistent with the Court's previous decision. The previous analysis of subject-matter jurisdiction focused on Defendants' argument that Plaintiff had not alleged injuries in fact that could be fairly traceable to Defendants' conduct. (Doc. 13 at 5–7; Doc. 19 at 2.) The Court found that the injuries Plaintiff alleged were sufficient to meet the "injury-in-fact" prong of the standing analysis. (Doc. 19 at 2.) By contrast, the recommendation that subject-matter jurisdiction is lacking over the Amended Complaint as to the equitable claims is based on the IADA's express requirement that an order dismissing an indictment for an IADA violation must issue from the court with jurisdiction over the pending indictment. IADA Article V(c). Although Defendants apparently sought dismissal of the initial Complaint on redressability grounds, they "appear[ed] to abandon this argument, focusing solely on their request that the Complaint be dismissed under Rule 12(b)(6)." (Doc. 13 at 5–6.)

plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across

the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S.

at 570.

      In assessing the adequacy of the pleadings, the court must accept all factual assertions as

true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch &*

*Co.*, 671 F.3d 120, 128 (2d Cir. 2011). Moreover, in cases involving a *pro se* plaintiff, the court

must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading

it "to raise the strongest arguments . . . suggest[ed therein]," *Bertin v. United States*, 478 F.3d

489, 491 (2d Cir. 2007) (internal quotation marks omitted). Even *pro se* litigants, however,

"remain subject to the general standard applicable to all civil complaints under the Supreme

Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV.

9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Triestman v. Fed. Bureau*

*of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from

compliance with relevant rules of procedural and substantive law." (internal quotation marks

omitted)). The court need not credit the complaint's "legal conclusions" and "[t]hreadbare

recitals of the elements of a cause of action, [which are] supported by mere conclusory

statements." *Iqbal*, 556 U.S. at 678; *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.

2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions

masquerading as factual conclusions." (internal quotation marks omitted)).

      The Amended Complaint alleges that DOC Commissioner Baker and DOC extradition

specialist Rogers are each liable in their "individual and personal" capacities for failing to follow

certain procedures applicable under the IADA. (Doc. 20 at 1.) Defendants contend, however,

that the Amended Complaint fails to state a claim upon which relief can be granted against these

Defendants because Plaintiff has not sufficiently alleged their personal involvement in the

allegedly unconstitutional conduct.  A defendant in a § 1983 action may not be held responsible

unless he or she was personally involved in the alleged constitutional violation.  *See Spavone v.*

*N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff

proceeding under § 1983 must allege facts showing the defendants' direct and personal

involvement in the alleged constitutional deprivation); *Johnson v. Barney*, 360 F. App'x 199,

201 (2d Cir. 2010) (holding that a § 1983 claim that fails to allege the personal involvement of

the defendant fails as a matter of law).  The Second Circuit has held that "personal involvement"

means "direct participation, or failure to remedy the alleged wrong after learning of it, or

creation of a policy or custom under which unconstitutional practices occurred, or gross

negligence in managing subordinates."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

"[T]here . . . must be some affirmative link to causally connect the actor with the [allegedly

unlawful] action."  *O'Connor v. 11 W. 30th St. Rest. Corp.*, No. 93 CIV. 8895 (LMM), 1995 WL

354904, at *7 (S.D.N.Y. June 13, 1995).

   Although the Amended Complaint contains more factual detail than the initial Complaint,

the allegations of Defendants' personal involvement remain vague and conclusory.  For example,

Plaintiff alleges that "the Court can infer [from the facts contained in the Amended Complaint]

that [Defendants] . . . were personally and directly involved in the constitutional or statutory

violations," and that "[b]oth of the Defendants in the[ir] supervisory roles[] did have personal

involvement with the actions/inactions/and injuries committed on the Plaintiff."  (Doc. 20 at 13.)

Similarly, Plaintiff alleges that "Baker is directly responsible and not merely just . . . '[a] link in

the chain of command, just [i]n a supervisory role[,]' [b]ut is one of the direct l[y]nch-pins in this

process." (*Id.* at 10.)  However, Baker's alleged failure to follow the "procedural guidelines" of

the IADA (*id.* at 7, ¶ 26), his alleged lodging of the detainer received from Pennsylvania (*id*. at 9,

¶¶ 32–33), and his alleged failure to respond to Plaintiff's grievance are insufficient to allege the

personal involvement in a constitutional violation required to sustain a § 1983 claim.  *See Joyner*

*v. Greiner*, 195 F. Supp. 2d 500, 507 (S.D.N.Y. 2002) ("Inaction following receipt of letters from

a prisoner regarding alleged violations does not automatically render an official personally liable

under Section 1983.").

The Amended Complaint alleges that Defendants Baker and Rogers were personally

involved in the alleged constitutional violations because (1) Rogers "denied all of Plaintiff's

requests to invoke [the] IAD[A] and Final Disposition of the Pennsylvania charges [from March

23, 2017 until] . . . 5/15/17" (*id.* at 4); (2) Rogers "denied [Plaintiff] the liberty interest right to

invoke" the IADA (*id.*); (3) Plaintiff received "paperwork" sent by Rogers in June 2019 (*id.*);

(4) Plaintiff and Rogers spoke on a conference call in October 2019, and Rogers told Plaintiff

she "would reach out to Pennsylvania about . . . Form V"[3] but "would not give [Plaintiff] any

further information about th[e] Form" (*id.* at 7); (5) Rogers's responses to Plaintiff's questions

were "vague" and she "had no answers" to Plaintiff's "in depth questions about [IADA]

Procedures" (*id.* at 8); (6) Rogers and Baker complied with Pennsylvania District Attorney

Matthew Fogal's request to lodge a detainer against Plaintiff (*id.* at 9); and (7) Baker failed to

respond to a grievance regarding the detainer hold (*id.* at 10).  Though somewhat detailed, these

---

[3] Plaintiff attaches to his Amended Complaint a document titled "Agreement on Detainers: Form V, Request for Temporary Custody." (Doc. 20-2, "Attachment 2.")  This document is dated May 30, 2019 and signed by Pennsylvania District Attorney Matthew Fogal and Judge Carol Van Horn of the Franklin County Court of Common Pleas.  (*Id.*)  It appears to be a formal request to bring Plaintiff to Pennsylvania for trial under Article IV of the IADA for the offense of Burglary and Theft by Unlawful Taking.

allegations simply do not demonstrate that Baker or Rogers personally engaged in a violation of the IADA or otherwise violated any other constitutional or statutory provision.

To the extent the Amended Complaint alleges that Defendants are liable to Plaintiff under a theory of supervisor liability, i.e., Baker as DOC Commissioner and Rogers potentially as a supervisor,[4] Plaintiff has not stated a claim. The allegations against these Defendants must show some level of personal involvement, given that supervisor liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *see Tangreti v. Bachmann*, 983 F.3d 609, 617–18 (2d Cir. 2020). The Second Circuit has clearly held that mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority). The Amended Complaint does not allege any action or inaction on the part of either Defendant from which the Court could infer they were personally involved in a constitutional or statutory violation.

Furthermore, the Amended Complaint does not meet the general pleading standards set forth in *Iqbal* and *Twombly*, relying merely on labels and conclusions, and a formulaic recitation of the elements of a cause of action. For example, it is unclear how or why Rogers allegedly denied Plaintiff's requests to invoke the IADA, what harm the alleged delay in that denial caused Plaintiff, why it was allegedly unlawful for Rogers to decline to answer all of Plaintiff's

---

[4] The Amended Complaint refers to Rogers as an "Extradition Specialist/IAD Administrator" (Doc. 20 at 7, ¶ 26), but does not explicitly allege that Rogers occupied a supervisory role. Plaintiff suggests, however, that Rogers was a resource for DOC caseworkers when they requested clarification on detainers and IADA requirements. (*Id*. at 6, ¶ 24.) The Court reads the Amended Complaint liberally to potentially assert a supervisory liability claim against Rogers.

questions about the IADA to his satisfaction, what the subject grievance ("Grievance #7") (Doc. 20 at 10) stated, and what act or omission on behalf of either or both Defendants caused or contributed to causing one or more violations of the IADA.

Finally, the Amended Complaint's claims are legally unsupported. First, an Article IV IADA claim fails where, as in this case, the prisoner was never imprisoned by the receiving state (Pennsylvania) and the prisoner experienced no interruption in his rehabilitation in the sending state (Vermont). *See United States v. Chico*, 558 F.2d 1047, 1049 (2d Cir. 1977) (holding that "Article IV(e) of the [IADA] does not apply to a case where a prisoner is removed from the prison of a state for a few hours to be arraigned, plead and be sentenced in the federal court without ever being held at any place of imprisonment other than that of the sending state and without interruption of his rehabilitation there"); *Roy*, 771 F.2d at 60 (holding it is not a violation of the IADA to keep prisoner overnight at state institution other than one in which he was serving his sentence and then return him to original institution the following day); *Lublin v. Johnson*, 628 F. Supp. 1496, 1499 (E.D.N.Y. 1986) (finding that, although a detainer was lodged against federal prisoner, the IADA was not applicable because prisoner "was never imprisoned by the receiving state"); *United States v. Cappucci*, 342 F. Supp. 790, 793 (E.D. Pa. 1972) ("In order to claim a remedy under [the IADA], a prisoner must allege that one jurisdiction has requested his transfer from another jurisdiction for trial and returned him without trying him to the first jurisdiction."). The Amended Complaint alleges neither that Plaintiff was imprisoned in Pennsylvania nor that Plaintiff's rehabilitation in Vermont was interrupted due to Defendants' failure to follow the IADA's procedures. Rather, Plaintiff states in the Amended Complaint that "Pennsylvania has failed to extradite . . . Plaintiff to Pennsylvania to answer . . . the [u]ntried Indictment." (Doc. 20 at 8.)

Second, the Supreme Court has held that the IADA's Article III 180-day period "does not commence until the prisoner's request for final disposition of the charges against him *has actually been delivered* to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."  *Fex*, 507 U.S. at 52 (emphasis added); *see id.* at 50 ("[T]he IAD unquestionably requires *delivery*, and only after that has occurred can one entertain the possibility of counting the 180 days from the transmittal to the warden."); *United States v. Paredes-Batista*, 140 F.3d 367, 374 (2d Cir. 1998) ("While under the IAD[,] the U.S. Attorney was required to bring [the defendant] to trial within 180 days, that 180-day clock did not begin to run until [the defendant's] demand for a speedy trial was actually . . . delivered to the [district] court and prosecuting officer." (fourth and fifth alterations in original) (internal quotation marks omitted)).  In fact, the Court found that even if delivery of the request for final disposition is delayed due to negligence or malice on the part of prison authorities, the IADA's clock does not start running until the notice is actually received by both the prosecutor and the court in the receiving state.  *Fex*, 507 U.S. at 49–50.  The Amended Complaint alleges only that Plaintiff "has *mailed* a multitude of letters to the Franklin County Court House in Chambersburg, Pennsylvania, and to [District Attorney] Fogal . . . requesting final disposition [of] the untried indictment charges" (Doc. 20 at 11 (emphasis added)), and not that any of these requests has actually been *delivered* to the court or prosecuting officer in Pennsylvania.

Third, courts have held that dismissal of a detainer because of negligence on the part of the sending state (Vermont here) "is not a part of the IAD[A]," and "it would be inappropriate for the federal courts to judicially expand the list of situations in which dismissal is dictated." *Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998), *modified on other grounds*, 149 F.3d 1226 (5th Cir. 1998); *see United States v. Pena-Corea*, 165 F.3d 819, 821–22 (11th Cir. 1999) (finding

that IADA did not apply to defendant, where state custodian failed to serve defendant with federal detainer and advise him of his right to demand trial after federal prosecutor had lodged detainer with custodian and requested that custodian advise defendant of such right); *State v. Pero*, 370 N.J. Super. 203, 218, 851 A.2d 41, 50 (App. Div. 2004) ("Several circuit courts have rejected defense motions to dismiss an indictment for IAD violations, even where either prison officials or procedures have impeded a prisoner's ability to request disposition."). As discussed above, the IADA provides for dismissal in only the following three circumstances: (1) if, after a prisoner has made the required request pursuant to Article III, trial does not occur within the required 180 days; (2) when trial does not occur before the prisoner, having been transferred to the receiving state, is sent back to the sending state; or (3) when the receiving state fails or refuses to accept temporary custody of the prisoner. *Lara*, 141 F.3d at 243. The Amended Complaint does not allege any of these circumstances.[5]

Accordingly, the Amended Complaint should be DISMISSED for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## Conclusion

For the reasons explained above, I recommend that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 21) be GRANTED, without leave to amend,[6] under Rules

---

[5] In his Opposition, Plaintiff asserts in passing that Defendants' failure to follow the IADA's procedural requirements resulted in violations of his Fourth Amendment right to be free from unreasonable search and seizure, Fourteenth Amendment right to due process, and Fifth Amendment right not to be denied life, liberty, or property without due process of law. (Doc. 22 at 6.) The Amended Complaint itself does not reference the Fifth Amendment, but does allege that Defendants' failure to follow the IADA resulted in violations of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments. (Doc. 20 at 13.) As these vague and conclusory allegations of constitutional violations arise from Plaintiff's claims of IADA violations generally, and those claims are legally unsupported, this Report and Recommendation does not address Plaintiff's alleged constitutional claims separately.

[6] Leave to amend is not required where, as here, the plaintiff has already amended the complaint and "[t]he problem with [the complaint] is substantive," such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

12(b)(1) and 12(b)(6) because (a) the claims for equitable relief are not redressable in this Court,

(b) there are insufficient allegations to support a claim of Defendants' personal involvement in

the purported unlawful conduct, and (c) the allegations in the Amended Complaint are

conclusory and do not state a legal basis for relief.

Dated at Burlington, in the District of Vermont, this 11th day of February 2022.

/s/ Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).